IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00710-LTB-MJW

THOMAS HOOTON,
JENNIFER HOOTON, and
CYCLONE ENTERPRISES, INC.,

Plaintiffs,

v.

NAOMI WOOD,
SEAN WOOD,
NAOMI I. WOOD TRUST, and
JOHN JOHNSON,

Defendants,

v.

EMPLOYERS MUTUAL CASUALTY CO., and
CYCLONE ENTERPRISES, INC., d/b/a Kilthau Transports,

Intervenor Plaintiffs.

## REPORT AND RECOMMENDATION
on

**MOTION REQUESTING SUMMARY JUDGMENT WITH SUPPORTING AUTHORITY
(Docket No. 57)**

**and**

**HOOTONS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
(Docket No. 63)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the Court pursuant to an Order Referring Case to Magistrate Judge entered by Judge Lewis T. Babcock on October 16, 2015 (Docket No. 26), the Memorandum (Docket No. 58) referring the Motion for Summary Judgment With Supporting Authority filed by Defendants Naomi Woods and Naomi I. Wood Trust (Docket No. 57) (the "Motion for Summary Judgment"), and the Memorandum (Docket No. 65) referring the Hootons' Motion for Leave to File Second Amended Complaint (Docket No. 63) (the "Motion to Amend"). The Court has reviewed the parties' filings, taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure and case law. Now being fully informed the Court makes the following report and recommendation.

## Background

Plaintiffs bring negligence claims against Defendants relating to an incident that occurred on November 28, 2012. Plaintiff Jennifer Hooton brings a loss of consortium claim against Defendants. On November 28, 2012, Plaintiff Tom Hooton was driving a semi-tractor on Colorado Highway 52 and saw a pickup truck driven by Defendant John Johnson backing into his lane of travel. Mr. Hooton changed lanes to avoid a collision with the pickup truck and collided with a black cow that had escaped from pasture land. The semi-tractor rolled upside down and Mr. Hooton suffered injuries.

## Motion for Summary Judgment
### (Docket No. 57)

**A. Mootness**

The Motion to Amend seeks to add one claim for a finding of joint liability under Colo. Rev. Stat. § 13-21-11.5(4) against Defendants Naomi Wood, Naomi I. Wood Trust, and Shawn Wood. In the Motion for Summary Judgment, Defendants Naomi

2

Wood and Naomi I. Wood Trust seek summary judgment of the negligence claims asserted against them.

In many circumstances, when a motion to amend is granted, any pending dispositive motions are denied as moot because they are directed at a pleading that is no longer the operative pleading. *See, e.g. Martinez v. Spa Motel*, No. 15-cv-00358-KLM, 2015 WL 6750269, at *5 (D. Colo. Nov. 5, 2015) (denying motion for summary judgment as moot); *Dempsey v. Jason's Premier Pumping Servs., LLC*, No. 15-cv-00703-CMA-NYW, 2015 WL 4761191, at *2 (D. Colo. Aug. 13, 2015) (mooting a partial motion for summary judgment due to the filing of an amended complaint); *Dicino v. Garcia*, No. 12-cv-01274-WYD-KLM, 2014 WL 3746961, at *2 (D. Colo. July 30, 2014). Therefore, in many cases, the Court will address a motion to amend prior to addressing any dispositive motions. However, in this case, in keeping with Fed. R. Civ. P. 1, it is most efficient to address both motions together because if the Motion for Summary Judgment is granted, the Motion to Amend, which seeks to add a joint liability claim that includes the two Defendants moving for summary judgment and Defendant Shawn Wood, would be rendered moot because two of the three Defendants against whom Plaintiffs seek joint liability as to the allegedly negligent acts would be granted summary judgment. Alternatively, if the Motion for Summary Judgment is not granted, the Court can then address the Motion to Amend as it would in the normal course.

### B. Standard

As Judge Babcock has explained:

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or

> affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
>
> A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).
>
> If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the [moving party] is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

*Parker Excavating, Inc. v. Lafarge West, Inc.*, No. 14-cv-01534-LTB-MJW, 2016 WL 1756440, at *3 (D. Colo. May 3, 2016). As the Supreme Court has made clear, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### C. Analysis

Defendants Naomi Wood and Naomi I. Wood Trust seek summary judgment on the negligence claims alleged against them. "To establish a prima facie case for negligence, a plaintiff must show that the defendant owed a legal duty of care to the

4

plaintiff, the defendant breached that duty, the plaintiff suffered injury, and the defendant's breach caused the plaintiff's injury." *Ryder v. Mitchell*, 54 P.3d 885, 889 (2002). "If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail." *Id*. Defendants Naomi Wood and Naomi I. Wood Trust argue that they owed no legal duty to Plaintiffs and, therefore, are entitled to summary judgment. (Docket No. 57 at 4-6). Defendant Naomi Wood argues that she sold the cattle in question to Shawn Wood in August 2012 and, as a result, she was not responsible for any injury allegedly caused by the cattle. (*Id*. at 4). She further argues that she was not responsible for management or maintenance of the grazing land because the land was quitclaimed to Defendant Naomi I. Wood Trust in 2010. (*Id*. at 5). Defendant Naomi I. Wood Trust argues that it was not in control of the grazing land because it had leased the land to Shawn Wood and that Shawn Wood was responsible for maintaining the land and the fences surrounding the land. (*Id*. at 5).

The Intervenor Plaintiffs' argue that there is a genuine issue of material dispute regarding ownership of the cattle. (Docket No. 59 at 2). They further argue that the alleged lease agreement is the subject of a factual dispute. (*Id*. at 3). Plaintiffs Tom and Jennifer Hooton make the same arguments. (Docket No. 60 at 3-4).

As explained above, the Court cannot grant summary judgment if there is a genuine issue of material fact. In this case, the factual issues identified by the parties are material because they are "facts that might affect the outcome of the suit under the governing law . . . ." *Anderson*, 477 U.S. at 248. With regard to the requirement that the dispute be genuine, the Supreme Court has explained that a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Id.* Accordingly, the Court turns to the evidence submitted by the parties to determine if there is a genuine dispute regarding the ownership of the cattle and the lease arrangement.

### 1. Cattle

Defendant Shawn Wood testified that he purchased the cattle from his mother, Defendant Naomi Wood in August of 2012. (Docket No. 57-1 34:11-14). Both Defendant Shawn Wood and Defendant Naomi Wood also submitted affidavits to this effect.[1] (Docket No. 57-2 & 57-3). However, as Shawn Wood also testified, shortly after the November 28, 2012 incident, the cattle were sold under Naomi Wood's name and the proceeds were paid to Naomi Wood, not Shawn Wood. (Docket No. 59-1 42:11-21, 47:12-20). In addition, Naomi Wood testified that on the night of the incident, she called 911 and told that dispatcher that "some of our cattle are out." (Docket No. 59-2 10:19-11:4). She also told the dispatcher that "I guess it's two black cows. Oh, those two darn things we can't keep in." (*Id.* 11:7-12). Later on the night of November 28, 2012, Naomi Wood called 911 again to ask about the accident and stated: "I called earlier, and I had a couple of cows out." (*Id.* 12:24-13:18). Mr. Wood also testified that he and his mother,

---

[1] The Court does not credit Defendants' affidavits because they contradict these individuals' deposition testimony. At their depositions, it was made clear that the questions regarding ownership of the cattle and the lease arrangement were far from clear-cut. As the Tenth Circuit has explained,

> Sham affidavits, though "unusual," arise when a witness submits an affidavit that contradicts the witness's prior testimony. *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir.2009). Although "[a]n affidavit may not be disregarded solely because it conflicts with the affiant's prior sworn statements," we may nonetheless disregard a conflicting affidavit if it "constitutes an attempt to create a sham fact issue." *Id.* (quotations omitted). "In determining whether an affidavit creates a sham fact issue, we consider whether: '(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'" *Id.* (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001)).

*Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014).

Naomi Wood, both agreed to sell the cattle in November 2012 because they were upset about the November 28 incident. (Docket No. 59-1 44:9-16). Naomi Wood testified that even though she sold the cattle to Shawn, he did not pay her. Instead, she was paid from the sale of the cattle to a third party after the November 28, 2012 incident. (Docket No. 59-2 15:22-16:18). Based on the above testimony, the Court agrees with Plaintiffs and Intervenor Plaintiffs that there is a genuine dispute regarding the ownership of the cattle. As a result, the Court concludes that Defendant Naomi Wood is not entitled to summary judgment on the negligence claim asserted against her to the extent it relates to the cattle and the owner's related duties.

### 2. Lease of Property

As noted above, Defendant Naomi Wood maintains that she quitclaimed the grazing property to Defendant Naomi I. Wood Trust. Defendants provided the Quit Claim Deed, which shows that on March 18, 2010, in exchange for ten dollars, Naomi Wood granted a quit claim deed to Naomi I. Wood Trust as to the grazing land. (Docket No. 57-5). Intervenor Plaintiffs argue that despite the quit claim deed, Defendants have not demonstrated in their Motion for Summary Judgment that the transfer of property to the trust "necessarily insulates Ms. Wood from potential liability." (Docket No. 59 at 3). The Court agrees with this. Defendants cite to one case to support their position that the quit claim deed means that Naomi Wood "had no legal control over the pasture land, and thus owed no duty to Plaintiffs regarding its maintenance and management." (Docket No. 57 at 5). This case, *Jordan v. Panorama Orthopedics & Spine Center, PC*, 346 P.3d 1035 (Colo. 2015), makes clear that, under the Premises Liability Act, an individual who can be held responsible for the condition of land as a "landowner"

7

includes persons responsible for the condition of the property, authorized agents, persons in possession, and others. *See also* Colo. Rev. Stat. § 13-21-115(1). The facts offered by Defendants in support of their Motion for Summary Judgment do not clarify whether Naomi Wood falls within this broader definition.

With regard to the alleged lease agreement between the trust and Shawn Wood, the evidence is muddy. There is no written agreement (Docket No. 59-2 19-21) and when questioned about the arrangement he had with either Naomi or the trust, Mr. Wood testified that they "didn't really have any [ ] arrangement." (Docket No. 59-1 48:6-21). Naomi Wood testified that it was a verbal agreement in which "He had cattle and I had cattle. He took care of my cattle, and he could run – he ran his cattle too, so . . . And then I decided to sell him all my cattle." (Docket No. 59-2 25:24-26:6). This verbal agreement does not establish who was legally responsible for maintenance and management of the land.

For these reasons, the Court concludes that Defendant Naomi Wood and Defendant Naomi I Wood Trust are not entitled to summary judgment on the negligence claim asserted against them to the extent it relates to the maintenance and management of the grazing land. Therefore, the Court recommends that the Motion for Summary Judgment be DENIED in all respects.

### Motion to Amend
### (Docket No. 63)

Because the Court concludes that the Motion for Summary Judgment should be denied, it next turns to the Motion to Amend. As noted above, Plaintiffs seek leave to add a third claim for relief seeking a finding of joint liability against Defendants Shawn Wood, Naomi Wood, and the Naomi I. Wood Trust pursuant to Colo. Rev. Stat. § 13-21-

111.5(4). Defendants argue that the motion should be denied because it is futile, untimely, and unduly prejudicial. (Docket No. 66 at 1).

As an initial matter, the Court notes that the deadline for amendment of pleadings was November 30, 2015 (Docket No. 25 § 9) and the instant motion was filed on September 22, 2016. In *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014), the Tenth Circuit held that "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Id.* at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D.Colo.2001)). Whether to grant leave to amend the pleadings "is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204-05 (10th Cir. 2006). Rule 15 instructs that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When the deadline for amendment of pleadings in the scheduling order has passed, however, Rule 16(b) applies and states that a scheduling order deadline "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P 16(b)(4).

### A. Rule 16

Plaintiffs argue that because the "factual basis for the claim under § 13-21-111.5(4), C.R.S. was not available until the defendants were deposed, well after the original deadline was set for amendment of pleadings," there is good cause to extend the scheduling order deadline. (Docket No. 67 at 3). The Court agrees that "if a plaintiff learns new information through discovery," Rule 16's good cause requirement is met. *Gorsuch*, 771 F.3d at 1240.

### B. Rule 15

Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Carr v. Hanley*, 2009 WL 4693870, *1 (D. Colo. Dec. 3, 2009) (quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)). The Court also notes that the Federal Rules of Civil Procedure in general, and Rule 15 in particular, favor resolving disputes on their merits, which counsels in favor of allowing amendment and permitting defendants to file appropriate motions to dismiss or for summary judgment. *Gocolay v. New Mexico Federal Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (1992) (citations omitted).

Defendants argue that Plaintiffs have unduly delayed and the Motion to Amend is untimely because the information Plaintiffs allege forms the basis for their proposed third claim was derived from depositions that took place on January 26, 2016 "a full 241 days before" the Motion to Amend was filed. (Docket No. 66 at 5). Plaintiffs maintain that satisfying Rule 16's standard, which they describe as "more stringent," means that they have satisfied Rule 15's analysis of whether amendment is untimely or unduly delayed. It is true that "Rule 16 erects a more stringent standard [than Rule 15(a) ], requiring some persuasive reason as to why the amendment could not have been

10

effected within the time frame established by the court." *Colorado Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D.Colo.2000). However, Plaintiffs must still address the requirements of Rule 15. If Rule 16 was simply more stringent than Rule 15 as a general matter, there would be no reason to engage in both analyses.

Under Rule 15, untimeliness alone may be a sufficient basis for denying a party leave to amend. *See Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005); *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether Plaintiffs have delayed, but whether such delay is undue. *Minter*, 451 F.3d at 1206. Delay is undue "when the party filing the motion has no adequate explanation for the delay," *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993), or when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)). Here, Plaintiffs may not have known of the new information until January 26, 2016, but they should provide some explanation for why they did not seek leave to amend until September 22, 2016. However, "[l]ateness does not of itself justify the denial of the amendment." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quotation marks and citation omitted). Instead, the Court "focuses primarily on the reasons for the delay." *Id.* at 1206. The problem in this case is that Plaintiffs offer no reason whatsoever. That is not sufficient to meet Rule 15's requirements.

With regard to Defendants' argument that amendment is futile, Defendants rely on the arguments raised in the Motion for Summary Judgment. (Docket No. 66 at 2-4). The Court has addressed the issues raised in the Motion for Summary Judgment above and will not revisit them now.

Finally, the Court notes that prejudice to the opposing party is the single most important factor in deciding whether to allow leave to amend. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). Defendants argue that they will be prejudiced because briefing of the Motion to Amend will not be concluded before the close of discovery and they may need to take additional discovery if amendment is allowed. (Docket No. 6 at 6-7). Essentially, they maintain that the delay between January 26, 2016 and the filing of the Motion to Amend on September 22, 2016 has foreclosed their ability to take discovery regarding the new claim. Plaintiffs maintain that Defendants will not be prejudiced because the new "claim is based entirely on [the] words of the defendants and Shawn Wood's girlfriend." (Docket No. 67 at 9). They further maintain that Defendants have identified no additional discovery that is needed, but state that they will not object to additional discovery if amendment is allowed. As Plaintiffs' note, the new claim would be a claim for joint liability which would be premised on the facts underlying their existing negligence claim. While the Court agrees that it is possible that Defendants will not need additional discovery, it is possible that they will want to re-depose certain parties to establish whether the requirements of Colo. Rev. Stat. § 13-21-111.5(4) are met. Colo. Rev. Stat. § 13-21-111.5(4) states that to impose joint liability on two or more persons, those persons must "consciously conspire and deliberately pursue a common plan or design to commit a tortious act." Furthermore, the

potential prejudice of Defendants having to engage in further discovery is due to the unexplained delay in seeking leave to amend.

Because Plaintiffs fail to offer any reason to explain the delay from January 26 to September 22, 2016, and because that delay may prejudice Defendants, the Court recommends that the Motion to Amend be DENIED.

## Recommendation

For the foregoing reasons, the undersigned RECOMMENDS that the Motion for Summary Judgment With Supporting Authority (Docket No. 57) filed by Defendants Naomi Wood and Naomi I. Wood Trust be DENIED and that the Hootons' Motion For Leave to File Second Amended Complaint (Docket No. 63) be DENIED.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions,** *Makin v. Colo. Dep't of Corr.,* **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse,* **91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated: January 9, 2017      */s/ Michael J. Watanabe*
        Denver, Colorado            Michael J. Watanabe
                                    United States Magistrate Judge